## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ALEX K. TORRES,

       Petitioner,

v.                                    CASE NO. 8:03-CV-2191-T-30MAP

JAMES McDONOUGH,[1]

       Respondent.

_____/

## <u>ORDER</u>

Petitioner, a State of Florida inmate proceeding *pro se*, initiated this cause of action

by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his

1998 convictions entered in the Thirteenth Judicial Circuit Court, Hillsborough County, Florida

(Dkt. 1). Respondent has filed a response to the petition (Dkt. 6), and Petitioner has filed a

reply thereto (Dkt. 9). The matter is now before the Court for consideration on the merits. An

evidentiary hearing is not required for the disposition of this matter. Rules Governing Section

2254 Cases 8(a).

## Background

Petitioner Alex Torres and co-defendants Humberto Garcia and Samuel Brown were

charged by Indictment with conspiracy to commit first degree murder (Count One),

conspiracy to commit robbery with a deadly weapon (Count Two), murder in the first degree

with a deadly weapon (Count Three), robbery with a deadly weapon (Count Four), and

armed burglary of a dwelling (Count Five). Petitioner, represented by counsel, agreed to

---

[1]James McDonough, the current Secretary of the Florida Department of Corrections, is substituted as the proper party respondent for James V. Crosby, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

testify against co-defendants Brown and Garcia in exchange for the State agreeing to accept Petitioner's plea of guilty as charged to Counts Two, Four, and Five, and the lesser included offenses of conspiracy to commit second degree murder (Count One) and murder in the second degree with a deadly weapon (Count Three). As agreed, Petitioner entered his plea on April 25, 1996 (Dkt. 6, Ex. 19 at R. 70-71). He was sentenced to serve a term of 15 years each on Counts One and Two, and 35 years each on counts Three, Four, and Five, with all sentences to run concurrently. *Id.* at R. 76-84.

One week later, Petitioner unsuccessfully sought to withdraw his plea on the ground that he had been told by an unidentified source that the trial court would not honor the agreement he made with the State. *Id.* at R. 93. On October 29, 1996, when the time came for Petitioner to fulfill his part of the bargain under the plea agreement, he refused to testify against co-defendant Brown. On the State's motion, Petitioner's plea and sentences were set aside, *see id.* at 98, and on November 4, 1996, he entered a plea of not guilty. *Id.* at R. 102.

Following a trial by jury, Petitioner was found guilty as charged. On June 1, 1998, he was sentenced to serve a term of 18.5 years each on Counts One, Two, and Five, life imprisonment on Count Three, and 15 years on Count Four, with the sentences on Counts One, Two, Four, and Five to run concurrently with each other but consecutively to Count Three (Dkt. 6, Ex. 01 at R. 223-40).

Represented by an assistant public defender, Petitioner asserted on direct appeal that the trial court erred (1) in denying his motion to suppress his confession because (a) his grandmother was not present during the interrogation and (b) the state failed to prove that his confession was voluntary; and (2) in denying his motion for judgment of acquittal on the conspiracy counts (Dkt. 6, Ex. 3). Petitioner's convictions and sentences were affirmed on

October 20, 1999, per curiam, without written opinion. *See Torres v. State*, 744 So.2d 1007 (Fla. 2d DCA 1999). The mandate issued on November 18, 1999 (Dkt. 6, Ex. 6).

Petitioner filed an application for state post-conviction relief pursuant to Fla. R. Criminal. P. 3.850 on May 10, 2000, alleging that trial counsel was ineffective in:

1. Failing to strike four biased and predisposed jurors;

2. Misadvising Petitioner as to the consequences of testifying, misadvising Petitioner that he should not testify, and failing to call Petitioner to testify;

3. Calling and/or continuing to question co-defendant, Samuel Brown, as a hostile witness;

4. Interrogating Brown's prosecuting attorney as to his opinion regarding the events surrounding the victim's death;

5. Conceding Petitioner's guilt during closing argument; and

6. Failing to insure the presence of all necessary individuals for the hearing on the motion to suppress Petitioner's out-of-court statement.

Dkt. 6, Ex. 07. On January 25, 2001, the trial court entered an order denying Grounds One, Four, Five, and Six of Petitioner's Rule 3.850 motion and directed the State to respond to Grounds Two and Three (Dkt. 6, Ex. 08).  Following an evidentiary hearing on August 30, 2001, the trial court entered an order denying Petitioner's Rule 3.850 motion (Dkt. 6, Ex. 11). The appellate court affirmed the trial court's decision on March 21, 2003, with the mandate issuing on May 22, 2003 (Dkt. 6, Ex. 18).  *See Torres v. State*, 853 So. 2d 423 (Fla. 2d DCA 2003).

Petitioner filed his petition for federal habeas relief on October 22, 2003, asserting the following grounds for relief:

1. Conviction obtained by violation of the privilege against self-incrimination;

2. Conviction obtained by use of coerced confession;

3. Trial counsel was ineffective [by] presenting [an] improper closing argument;

4.   Trial counsel was ineffective in calling co-defendant Samuel Brown as a hostile witness and cross-examining the state attorney handling Brown's case; and

5.   Trial counsel was ineffective in failing to strike four prospective jurors.

Dkt. 1.   Respondent acknowledges that the petition is timely but argues that it should be denied because Petitioner has failed to make the showing necessary for relief under 28 U.S.C. § 2254 (Dkt. 6 at 2).   Having reviewed the record, the parties arguments, applicable statutes, and controlling case law, this Court agrees.

### Standard of Review

Pursuant to 28 U.S.C. § 2254(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996,  "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims.   *See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

(1)         resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law,  as determined by the Supreme Court of the United States; or

(2)         resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented  in the State court proceeding.

28 U.S.C. § 2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003). Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision. *See Wright v. Sec. of Dep't. of Corrs.*, 278 F.3d 1245, 1255  (11th Cir. 2002). Finally, a state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## Discussion

Since Petitioner's conviction was entered after AEDPA was enacted, his petition is subject to the provisions thereof. As set forth above, Petitioner raises two claims of trial court error and three claims of ineffective assistance of counsel (Dkt. 1).  Because a state court initially considered the claims raised in the petition, § 2254(d) governs the review thereof. *See Mobley v. Head*, 267 F.3d 1312, 1316 (11th Cir. 2001).

**Grounds One and Two**

Because the claims asserted in Petitioner's first two grounds for relief are inextricably intertwined, they will be discussed together. Petitioner asserts that the trial court erred in denying a motion to suppress his confession on grounds that his Fifth Amendment rights[2] were violated because his grandmother was not present during his interrogation and he "was coerced [to confess] with the promise of help if [he] cooperated" with the detectives. Petitioner raised these two claims on direct appeal. Although the appellate court rejected the

---

[2]Respondent reads these two claims to assert violations of the Fourth Amendment search and seizure provision, arguing that both claims are foreclosed by the holding in *Stone v. Powell*, 428 U.S. 465, 494-95 (1976)).  *See also Mincey v. Head*, 206 F.3d 1106, 1125 (11th Cir. 2000).  Based on Petitioner's statements that his "conviction was obtained in violation of the privilege against self-incrimination" (Dkt. 1 at 5) and "by use of [a] coerced confession" (Dkt. 1 at 6), the Court concludes that Grounds One and Two fall within the purview of the Fifth Amendment.

claims without a written opinion, its decision is entitled to the same deference as if it had entered written findings in support thereof.  *See Wright v. Sec. of Dep't. of Corrs.*, 278 F.3d at 1255.

Petitioner confided in his brother that he was involved in the Owens robbery and murder. Shortly thereafter, Petitioner fled from Tampa, Florida, to San Juan, Puerto Rico. Antonio Torres informed the detectives investigating the Owens case that Petitioner and co-defendant Garcia had left Tampa en route to Puerto Rico. Federal authorities, acting on information that Petitioner had left Florida, issued a warrant for unlawful flight to avoid prosecution.   When the Federal Bureau of Investigation ("FBI") Violent Crimes Task Force discovered that Petitioner was living in San Juan with his father, grandmother, and aunt, they alerted Florida authorities, and two Hillsborough County detectives were dispatched to Puerto Rico to assist in effecting Petitioner's arrest.  On August 16, 1996, Petitioner was arrested on the Hillsborough County warrant. *See* Dkt. 6, Ex. 019, Vol. III at 299-301. He was 17 years old at the time. Before he was removed from the family home, Petitioner was apprised of his rights under *Miranda*,[3] and the record reflects that Petitioner's father, grandmother, and aunt were informed of the reasons for Petitioner's arrest when he was taken into custody.

According to Petitioner, on the drive to the FBI building, the detectives told him that if convicted of first degree murder, he was facing a sentence of life imprisonment or the

---

[3]Established in *Miranda v. Arizona*, 384 U.S. 436 (1966), the Fifth Amendment right to counsel is intended to operate prophylactically  to protect a defendant from making self-incriminating statements during his arrest or interrogation that might be used against him in the course of subsequent legal proceedings.  *Id.* at 478-79.  Petitioner acknowledges that an FBI agent advised him of his rights under *Miranda* before he was removed from the family home.  According to Petitioner's testimony during the suppression hearing, one of the Florida detectives read Petitioner his *Miranda* rights again after he was taken to the FBI building, *see* Dkt. 6, Ex. 19, Vol. VIII at R. 813-16. Petitioner then executed a written waiver of his *Miranda* rights and gave a statement to the detectives. *Id.* at R. 155; R. 815-16.
   When asked during the suppression hearing if he understood what he was signing when he executed the waiver form, Petitioner vacillated, saying at one point, "I believe so," then stating upon further questioning "[n]ot exactly what [the right to remain silent] means," and finally avoiding altogether answering when asked if he understood at the time that what he said to the detectives could be used in court against him.  *Id.* at 816.

"electric chair." Petitioner testified during the suppression hearing that the detectives also told him that if he "cooperated, . . . they would eventually talk with the judge and see that [sic] they could help [him] out someway. . . . [[T]hey would talk with the judge and try to do something" (Dkt. 6, Ex. 19 at R. R. 814-15).

Petitioner's aunt and grandmother[4] appeared at the police station nearly three hours after he was removed from the home.[5] By that time, Petitioner had been advised of his rights under *Miranda* a second time, waived those rights in writing, and given a statement to the detectives regarding his involvement in the offenses of conviction, contrary to instructions given to him by his grandmother at the time of his arrest that he was not to say anything to the detectives until she arrived at the police station. Petitioner contends that had the detectives not "coerced" him into confessing with promises to help him, he would have waited for his grandmother[6] to appear before making a statement. Petitioner reasons, therefore, that the trial court erred in denying his motion to suppress.

---

[4]The record reveals that Petitioner's father did not accompany the grandmother and aunt into the police station. According to testimony by Petitioner's aunt, his father accepted the news calmly, *see id.* at 797, contrary to Petitioner's testimony that his father began crying when he saw his son in handcuffs and learned that he was charged with murder, *see id.* at 815. Nothing in the record explains why the father failed to accompany the grandmother and the aunt to the police station after Petitioner's arrest.

[5]Testimony during the suppression hearing revealed that Petitioner's family was confused about where Petitioner was to be taken when he was removed from the home. Being fluent in Spanish, FBI Agent Raymond Lopez spoke with the father and then with the grandmother and aunt regarding the procedures that would be followed in preparing for Petitioner's extradition to Florida. Petitioner's aunt testified that she recalled being told that Petitioner was being taken to "Extraditions," which she thought meant the local police station. *Id.* at R. 790. His grandmother, on the other hand, testified that she understood that the agents were taking her grandson "to Court, which is in Alto Rey." During the trial, however, Agent Lopez testified that he explained to the father and the two "adult" females in the home that Petitioner was being transported to the Federal Building for processing, following which the local police would be contacted to transport Petitioner to their facility for extradition (Dkt. 6, Ex. 19, Vol. III at 300-01; 309-11). Whatever the source of confusion, Petitioner was, in fact, taken to the FBI building in San Juan for processing before being taken to the police station. It does not appear from the record that Petitioner's family was intentionally misled regarding his whereabouts during the three-hour interval.

[6]Petitioner contends that the presence of his grandmother was required because she was his "legal guardian," but testimony during the motion to suppress hearing revealed that the grandmother did not have legal custody or guardianship over Petitioner (Dkt. 6, Ex. 19, Vol. VIII at R. 798; 817).

The record reveals that Petitioner presented the factual basis for these claims to the Florida courts, fully litigating the matter before the trial and appellate courts. *See Torres v. State*, 744 So.2d 1007 (Fla. 2d DCA 1999). A suppression hearing was held during which the trial court heard testimony by the two detectives to whom Petitioner confessed, his aunt, his grandmother, and Petitioner.  At the conclusion of the hearing, the trial court denied the motion to suppress. Petitioner does not assert that his right to due process was violated during the interrogation or the suppression proceedings.

Neither the Florida courts nor the United States Supreme Court has adopted a bright-line rule that would render a confession by a juvenile made in the absence of a parent or legal guardian *per se* involuntary.[7] *See Gallegos v. Colorado,* 370 U.S. 49, 52-55 (1962); *Ramirez v. State*, 739 So.2d 568, 577 (Fla.1999); *State v. Francois,* 197 So.2d 492, 493-95 (Fla.1967). There is no guide to the decision of cases where the voluntariness of a juvenile's confession is at issue except the totality of circumstances test enunciated in *Gallegos v. Colorado*, 270 U.S. at 52-55. Courts look to the juvenile's age, along with his experience, education, background, and intelligence, as well as the length of detention, in assessing whether the juvenile's confession is knowing, voluntary and intelligent. *See Fare v. Michael C.,* 442 U.S. 707, 724-25 (1979); *see also Doerr v. State,* 383 So.2d 905, 907 (Fla. 1980); *Rimpel v. State,* 607 So.2d 502, 503 (Fla. 3d DCA 1992).

A 17-year-old fugitive with three prior experiences with the juvenile justice system when he was arrested, Petitioner acknowledged during the suppression hearing that he had an eighth-grade education and could speak both English and Spanish fluently and read

---

[7]Petitioner's confession was not inadmissible under Florida's law governing the detention of juveniles because Petitioner was arrested in the presence of his father, grandmother, and aunt, *see* Fla. Stat. 39.037(2) 1995 (police are obligated to attempt, and "*continue such attempt,*" to notify a juvenile's parents upon taking him into custody (emphasis added)). *See also Ramirez v. State*, 739 So.2d at 577 (Fla. 1999).

English "pretty good," *see* Dkt. 6, Ex. 19, Vol. VIII at R. 817. There is no allegation that Petitioner has low intelligence or was in any way mentally impaired when he made his statement. This is not an instance of a long detention or failure to notify the parents of the juvenile's detention – Petitioner was taken into custody in the presence of his father inside the family home and made his statement within approximately two hours of being taken out of the home. As discussed above, Petitioner was advised by his grandmother not to speak with anyone until she arrived at the police station. Thus, he had the benefit of the advice of a family member before he waived his *Miranda* rights and made a statement to the detectives – advice he acknowledges he elected to ignore in hopes of leniency.

Petitioner fails to demonstrate that the detectives' conduct during the arrest, the drive to the FBI building, or the interrogation was in any way coercive, and no such impropriety is apparent in the record. Considering the circumstances surrounding the administration of the *Miranda* warnings, in conjunction with the totality of circumstances surrounding Petitioner's arrest and detention, the trial court's finding that Petitioner failed to establish a basis for suppressing his statement and any evidence discovered as a result of his efforts to cooperate with law enforcement was reasonable and proper. This is particularly so given Petitioner's acknowledgment that he was twice read his *Miranda* rights, informed law enforcement that he understood those rights, and signed a written waiver before he gave his statement.  The trial court's denial of the motion to suppress is further supported by Petitioner's  admission that he did not indicate a desire for counsel or to remain silent or ask to have his grandmother present during questioning.

Given the credibility assessment required to find a voluntary waiver in this case, and the deference due state-court factual findings under AEDPA, it cannot be said that the trial

court's resolution of this claim was contrary to or an unreasonable application of Supreme Court law. Grounds One and Two do not warrant habeas corpus relief.

**Grounds Three, Four, and Five**

The remainder of Petitioner's claims are premised on the Sixth Amendment right to effective assistance of counsel. To establish a prima facie claim of ineffective assistance of counsel at trial, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Id.* at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "[T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)).

Because the ultimate resolution of ineffective assistance of counsel claims is a mixed question of law and fact, *Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001); *Meeks v. Moore*, 216 F.3d 951, 959 (11th Cir. 2000), the presumption of correctness contained in § 2254(e)(1) does not apply to this determination. *Parker v. Head*, 244 F.3d 831, 835-37 (11th Cir. 2001). State court findings of historical facts made in the course of evaluating an ineffectiveness claim are, however, subject to a presumption of correctness under 28 U.S.C. § 2254(e) unless the petitioner demonstrates by clear and convincing evidence that they are incorrect, *see Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), a burden that Petitioner has failed to carry. *See also* 28 U.S.C. § 2254(e)(1).

The trial court set forth the correct standard of review for an ineffective assistance of counsel claim. Thus, to be entitled to relief under § 2254, Petitioner must establish that the

trial courts's application of the *Strickland* standard in reaching the determination that the claims raised in his Rule 3.850 motion lacked merit was objectively unreasonable or that the decision "was based on an unreasonable determination of the facts in light of the evidence presented." *See* 28 U.S.C. § 2254(d).

**Ground Three**

In Ground Three, Petitioner complains that trial counsel was ineffective in conceding Petitioner's guilt during closing argument.[8] The Court has reviewed the transcript and finds that, as the trial court noted in its order rejecting this claim, trial counsel's performance was not deficient in this regard:

> In ground five, Defendant alleges ineffective assistance of counsel for conceding during closing arguments that Defendant was guilty of being a willing participant in the death of the victim. After a careful [sic] of defense counsel's closing argument, there is no record that counsel ever conceded Defendant's guilt to the jury. (*See* transcript vol. V, p. 628-651, attached). In fact, counsel summed up the evidence presented by the State as being contrary to any finding that Defendant was a willing participant in the victim's death. (*See* transcript vol. V, p. 628-651, attached). Since Defendant fails to meet the deficient performance component of the *Strickland* test, no relief is warranted on this ground.

Dkt. 6, Ex. 08 at 7-8.

The record supports the trial courts adjudication of this claim. Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002). Petitioner has not shown either that there

---

[8]Respondent reads the claim raised in Ground Three to assert that trial counsel conceded Petitioner's guilt in his opening statement and in closing argument.  The Court concludes, to the contrary, that Petitioner is merely comparing trial counsel's statements during his closing argument to comments he made during his opening statement to support his allegation that "trial counsel bedded down with the State in the end," *see* Dkt. 1 at 8-C, rather than faulting trial counsel's opening statement. Ground Three is, thus, properly exhausted.

was an erroneous application of *Strickland* or that the trial court's application of the *Strickland*
standard was objectively unreasonable.

Closing argument is intended to "assist the jury in analyzing, evaluating and applying
the evidence." *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984). Here, trial
counsel provided a strong closing argument in an effort to  refute the evidence adduced by
the State. Trial counsel's efforts during closing argument to demonstrate weaknesses in the
State's case by restating the State's evidence and ways in which it conflicted with trial
testimony is zealous advocacy -- not an admission of guilt. Applying the *Strickland* standard,
trial counsel's performance cannot be said to have been objectively unreasonable under
prevailing professional norms.

Petitioner has failed to demonstrate that the trial court's rejection of this claim
contradicts or is an unreasonable application of clearly established Supreme Court law. 28
U.S.C. 2254(d). The Court concludes that Petitioner has not established that he is entitled
to federal habeas relief on Ground Three.

**Ground Four**

In Ground Four, Petitioner asserts that trial counsel was ineffective in calling co-
defendant Brown as a hostile witness and cross-examining the state attorney handling
Brown's case. In its order denying Petitioner's "hostile witness" argument, the trial court made
the following findings, following an evidentiary hearing:

> In ground three, Defendant alleges ineffective assistance of counsel for calling
> and/or continuing to question co-defendant, Samuel Brown, as a hostile
> witness.  Defendant contends that counsel elicited testimony from Samuel
> Brown that Defendant was the one who stabbed the victim. Mr. Sinardi testified
> that it was a strategic decision to call Mr. Brown to elicit testimony that as the
> main perpetrator he was allowed to enter a plea to second degree murder for
> seventeen years. (*See* transcript dated August 30, 2001, p. 10, L: 15-20,
> attached). Mr. Sinardi felt that through cross-examination of Mr. Brown, he
> would be able to convey to [the] jury that he was a liar, had a prior criminal

record, and that in fact the State gave a deal of second degree murder. (*See* transcript dated August 30, 2001, p. 10, L: 21-25, p. 11, L: 1-5, attached). This strategy would have supported the evidence admitted at trial that Mr. Brown was the main culprit and in turn sustained Defendant's theory of defense that since Mr. Brown was convicted of second degree murder, Defendant should only be convicted of second degree murder. (*See* transcript dated August 30, 2001, p. 11, L: 9-14, attached).

The Court finds that counsel made an informed strategic decision to call Mr. Brown to testify. "Judicial scrutiny of counsel's performance must be highly deferential. . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, S. Court. at 2065. Since decisions concerning trial strategy or tactics ultimately rests with counsel, "tactical or strategic decisions of counsel do not justify post conviction relief on the grounds of ineffective assistance of counsel." *Mazard v. State*, 649 So. 2d 255 (Fla. 3d DCA 1995); *see also Medina v. State*, 673 So. 2d 298 (Fla. 1990) (holding that counsel cannot be ineffective for strategic decisions made during a trial). As such, no relief is warranted on this ground.

Dkt. 6, Ex. 11 at R. 63-64. As to Petitioner's assertion that trial counsel was ineffective for cross-examining the State attorney prosecuting the case against Brown, the trial court summarily denied this claim, finding that:

In ground four, Defendant alleges ineffective assistance of counsel for interrogating Samuel Brown's prosecuting attorney, Mr. [Christopher] Moody, as to his own opinion regarding the events surrounding the victim's death. However, a review of the record demonstrates that counsel adequately impeached Mr. Moody during cross-examination. (*See* transcript vol. V, p. 591-605, attached). Defense counsel is not deficient simply because he ultimately failed to persuade the jury. *See Ferguson v. State*, 593 So. 2d 508 (Fla. 1992). Since Defendant fails to prove deficient performance, no relief is warranted on this ground.

Dkt. 6, Ex. 8 at R. 72-73. In the present case, the record supports the trial court's findings.

Trial counsel attempted, albeit unsuccessfully, to discredit co-defendant Brown by exposing his involvement in the crime and the favorable treatment he allegedly received from

the State in exchange for his promise to testify against Petitioner[9] -- a promise he was not called upon to fulfill. When trial counsel called Brown as a hostile witness, the State responded by calling Attorney Moody to testify on rebuttal to clarify that a significant portion of the evidence the State had against Brown was the testimony of Petitioner and co-defendant Garcia. After the jury was empaneled and opening statements were presented at Brown's capital murder trial, Petitioner and Garcia announced that they would not testify against him. Without their testimony, a significant portion of the State's evidence against Brown was no longer available. In exchange for a guilty plea, the State  agreed to dismiss two of the charges against Brown and reduce two of the remaining three charges to lesser included offenses, resulting in Brown receiving a sentence of only 17 years. Trial counsel vigorously attempted to get Attorney Moody to admit that it was Brown alone who effected the victim's death, and he was offered a plea in exchange for his promise to testify against Petitioner (Dkt. 6, Ex. 19, Vol. V at Tr. 600).

"Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected . . . if they are based on professional judgment." *Strickland*, 466 U.S. at 681. *See also Whitfield v. State*, 923 So.2d 375 (Fla. 2005).  In the instant case, Petitioner's confession

---

[9]As discussed above, Petitioner and two co-defendants were implicated in the August 5, 1995 robbery and murder of Michael Owens, whose apartment was directly above Brown's apartment. The theory of Petitioner's defense was that he was not a knowing and willing participant in the robbery or death of the victim. Petitioner maintained that Brown stabbed the victim, and with the assistance of co-defendant Garcia, ultimately  succeeded in killing him (Dkt. 6, Ex. 19, Vol. I at Tr. 163). Brown testified to the contrary, stating that on the day in question, the victim invited Brown to his apartment to watch a wrestling video. Approximately 30 minutes later, Brown called his apartment and asked Petitioner to bring the beer and whiskey that had been left from the previous night's party to the victim's apartment.  After Petitioner and co-defendant Garcia arrived at the victim's apartment, Petitioner had an argument with the victim over money. According to Brown, the argument escalated until the victim told Petitioner that he had no intention of giving Petitioner any money. Brown further testified that at that time, Petitioner "took out" a knife and stabbed the victim once in the chest, following which co-defendant Garcia struck the victim in the back of his head with the chain Brown used to secure his bicycle (Dkt. 6, Ex. 19, Vol. IV at Tr. 519-22).  Brown testified that he yelled at the three men to stop fighting, then "jumped out of the apartment" without having had any involvement in the attack. *Id.* at Tr. 522.

established that he was not merely present when the offenses occurred -- the jury had the benefit of hearing his recorded statement admitting that he supplied the weapon used to stab the victim and stood on the victim's legs to prevent him from thrashing around while Brown repeatedly attempted to slash his throat. Where information damaging to the defense is known to trial counsel, he is not ineffective for pursuing a strategy aimed at placing his client in a better light in the eyes of the jury.  Here, trial counsel decided in his professional judgment that discrediting the person who allegedly controlled the events that occurred in the victim's apartment on August 5, 1995, and wielded the weapons that were used to bring about his gruesome death required that trial counsel question co-defendant Brown as a hostile witness and challenge the State's motivation in entering an agreement whereby Brown, the actual killer, was able to "trade" his testimony against the Petitioner for favorable treatment in his criminal prosecution.

Given the record before the Court, trial counsel's performance clearly met the standard for effective assistance of counsel guaranteed by the Sixth Amendment. Having failed to demonstrate that trial counsel's performance was "outside the wide range of professionally competent assistance," *Strickland*, 466 U.S. at 690, Petitioner fails to satisfy the *Strickland* test. The trial court's rejection of this claim is in keeping with the standard for effective assistance of counsel enunciated in *Strickland*.

**Ground Five**

In Ground Five, Petitioner asserts that trial counsel was ineffective in failing to strike four allegedly "biased" jurors. The trial court summarily denied this claim, finding that Petitioner failed to establish prejudicial error, as required by *Strickland*:

> In ground one, Defendant alleges ineffective assistance of counsel for failing to strike four biased and predisposed jurors.

The Florida Supreme Court adheres to the following *Lusk* test to determine juror competency:

> "The test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." *Pentecost v. State*, 545 So. 2d 861 (Fla. 1989) *citing Lusk v. State*, 446 So. 2d 1038, 1041 (Fla.) *cert. denied*, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984).

In ground one, with respect to Dawn Jackson defendant claims that trial counsel should have objected to Ms. Jackson due to the fact that both her brother-in-law and future brother-in-law are Hillsborough County Sheriffs.

Ms. Jackson stated that despite having family members as law enforcement officers she would not have to offer an explanation to her brother-in-law or future brother-in-law if she returned a not guilty verdict. (*See* transcript vol. I, p. 90, L: 20-24, attached). Ms. Jackson further stated that such a consideration would have no influence on her verdict. (*See* transcript vol. I, p. 90, L: 25, p. 91 L: [sic] A review of the record demonstrates that Ms. [Jackson] indicated that she would not have a problem being fair and impartial despite her alleged bias or prejudice. (*See* transcript vol. I, p. 121, L: 19-25, p. 122, L: 1-19, attached). Therefore, Ms. Jackson met the *Lusk* standard for juror competency and any alleged deficient conduct on the part of trial counsel did not result in prejudice. As such, Defendant has failed to meet the prejudice component of the *Strickland* test and no relief is warranted.

In ground one with respect to Cheryl Yatteau, Defendant claims that counsel should have objected to Ms. Yatteau due to Ms. Yeatteau's [sic] response to counsel's inquiry as to "whether anyone believes that Defendant must have done something or the State would not have accused him of all these crimes or else he wouldn't be sitting here." In response, to counsel's adage where there's smoke there's fire, Ms. Yatteau responded, "Where there's smoke there is smoke." (*See* transcript vol. I, p. 79, L: 23-24, attached). However, a review of the record shows that Ms. Yatteau indicated that she would have no problem being fair and impartial. (*See* transcript vol. I, p. 121, L: 19-25, p. 122, L: 1-19, attached). Therefore, Ms. Yatteau met the *Lusk* standard for juror competency and any alleged deficient conduct on the part of trial counsel did not result in prejudice.  As such, Defendant has failed to meet the prejudice component of the *Strickland* test and no relief is warranted.

In ground one, with respect to Robert Eley and Joseph Hill Defendant claims that counsel should have objected to both Mr. Eley and Mr. Hill because their responses to counsel's inquiries indicated that they would not judge the Defendant fairly.  Specifically, Defendant claims that Mr. Eley's and Mr. Hill's responses "that everyone involved in a crime should be equally punished for the same act" indicated that he would not be able to judge Defendant fairly.

> However, a review of the record shows that neither Mr. Eley or Mr. Hill indicated that they would have a problem being fair and impartial. (*See* transcript vol. I, p. 121, L: 19-25, p. 122, L: 1-19, attached). Therefore, Mr. Eley and Mr. Hill both met the *Lusk* standard for juror competency and any alleged deficient conduct on the part of trial counsel did not result in prejudice.  As such, Defendant has failed to meet the prejudice component of the *Strickland* test and no relief is warranted.

Dkt. 6, Ex. 08 at 3-5.

The Sixth Amendment guarantees the accused a "trial, by an impartial jury . . ." in federal criminal prosecutions. U.S. Const. amend VI.  Because "trial by jury in criminal cases is fundamental to the American scheme of justice," the Due Process Clause of the Fourteenth Amendment guarantees the same right to the accused in state criminal prosecutions. *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968).

Here, Petitioner's claim of ineffective assistance of counsel is premised on trial counsel's failure to strike four allegedly biased jurors. To maintain a claim that a biased juror prejudiced him, however, a petitioner must show that the juror was actually biased against him. *See Smith v. Phillips,* 455 U.S. 209, 215 (1981). In the present case, Petitioner has adduced no evidence other than the transcript of the jury selection proceeding to support his claim that trial counsel was ineffective for failing to strike jurors Jackson, Yatteau, Eley and Hill from the jury pool.

"[A] motion to excuse a venire member for cause . . . must be  supported by specified causes or reasons that demonstrate that, as a matter of law, the venire member is not qualified to serve."  *Gray v. Mississippi*, 481 U.S. 648, 653 n.3 (1987). As with federal law, when a party raises a cause challenge to a juror in a Florida court, "[t]he test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." *Lusk v. State*, 446 So.2d 1038, 1041 (Fla. 1984). As the trial court properly found,

each of the jurors Petitioner challenges met the standard for juror competency under both federal and Florida law.

Having reviewed the voir dire transcript, the Court finds that  Petitioner has not shown that any of the jurors he has identified was actually biased, and thus has failed to show that he was prejudiced by their presence on the jury. Jurors Jackson, Yatteau, Eley and Hill each responded to questioning without equivocal or conditional answers, and their responses did not raise any doubt as to whether they possessed the requisite state of mind necessary to render an impartial decision.

"An attorney's actions during voir dire are considered to be matters of trial strategy. *Teague v. Scott,* 60 F.3d 1167, 1172 (5th Cir.1995). There is a strong presumption in favor of competence, and Petitioner must establish that no competent attorney would have taken the action that trial counsel chose. Petitioner fails to meet this burden. The trial court's finding that there was no showing of prejudice was reasonable under these circumstances and is entitled to deference.

Having failed to meet either prong of the *Strickland* test, Petitioner has not demonstrated that he was deprived of his Sixth Amendment right to effective assistance of counsel. The trial court's adjudication of this claim is not contrary to, or an unreasonable application of, clearly established Federal law or in an unreasonable determination of the facts of Petitioner's case. 28 U.S.C. § 2254(d).

### Conclusion

For the foregoing reasons, the Court finds that Petitioner has failed to establish that he is entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1.    The Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1).

2.    The **Clerk** shall enter judgment against Petitioner, terminate all pending motions,

and close this case.

**DONE** and **ORDERED** in Tampa, Florida on February 8, 2007.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
All Parties/Counsel of Record

SA:jsh